**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BAYER CROPSCIENCE LP,

                Plaintiff,

v.                                          CIVIL ACTION NO. 2:10-cv-00348

CENTRAL WEST VIRGINIA ENERGY, INC.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the plaintiff's Motion for Summary Judgment to enforce an arbitration award [Docket 11] and the defendant's Cross-Motion for Summary Judgment to Vacate Portion of Arbitration Award [Docket 18]. For the following reasons, the plaintiff's motion is **GRANTED**, and the defendant's motion is **DENIED**.

**I.    Background**[1]

A description of this case was best put by the arbitration panel that decided it: "On the surface, this is a simple breach of contract case. In reality, it is a complex factual and legal situation involving competing contracts, allegations of fraud, duress, and undue influence, and numerous mistakes by both parties . . . ." (Reasoned Award [Docket 18-4, Pet. Ex. Q], No. 55-198-Y-317-98 at 3 (Feb. 11, 2010) (the "Arbitration Decision").) This matter concerns two coal sales agreements with two different arbitration provisions. The plaintiff, Bayer CropScience LP ("BCS"), and the

---

[1]This case has followed a circuitous and convoluted procedural history that involves actions filed in West Virginia state and federal court and Virginia federal court, as well as dueling demands for arbitration. I will recount only the relevant history here.

defendant, Central West Virginia Energy, Inc. ("CWVE") entered into a coal sales contract in 1997 called the Rhone-Poulenc Agreement (the "RP Agreement").[2]  The RP Agreement provides the following, in relevant part:

> Section 21. Arbitration.  All disputes under this Agreement shall be referred to arbitration; provided, however, that with respect to provisions contemplating mutual agreement of the parties failure to agree shall not be deemed disputes subject to arbitration. . . .  The arbitration proceedings shall be held in Charleston, West Virginia.  Results of the arbitration shall be binding on both parties.

(RP Agreement [Docket 18-2, Pet. Ex. A] at 21.)   The contract was for a term of two years, but it could be extended for one-year terms.  The RP Agreement was extended by agreement several times, but the parties dispute whether the extensions reached into 2008.

The parties entered into another agreement in July 2008 (the "2008 Agreement").  The 2008 Agreement set forth a new price for coal covering the time period from July 1, 2008, to December 31, 2010.  Section 20(i) of this agreement provides the following:

> Any controversy or claim arising out of or relating to this contract or the breach hereof shall be settled by arbitration in Richmond, Virginia . . . .

(2008 Agreement [Docket 18-2, Pet. Ex. B] at 13.)

In 2008, the price of coal rose dramatically, and a dispute arose between the parties regarding pricing and delivery of the coal.  In light of the dispute, the plaintiff sent a Demand for Arbitration letter to the defendant on December 5, 2008, stating that "[p]ursuant to the terms of § 21 of the RP Agreement, the hearing locale shall be Charleston, West Virginia." (Demand Letter [Docket 18-2, Pet. Ex. D] at 3.)  The letter also explained that the RP Agreement governed the dispute because, "[s]ince 1997, CWVE[] and BCS have engaged in a course of conduct by extending the RP

---

[2]Rhone-Poulenc was BCS's predecessor and a party to the RP Agreement.

Agreement's term by negotiating and agreeing to a coal price for successive periods of time." (*Id*. at 1.)  The American Arbitration Association appointed a three-member panel to hear the dispute (the "Charleston Arbitration Panel").

On March 30, 2009, CWVE likewise made a demand for arbitration in Richmond, pursuant to the 2008 Agreement.  It also filed a motion to dismiss the Charleston arbitration proceedings, arguing that Richmond was the proper venue.  The Charleston Arbitration Panel denied the motion. (*See* Preliminary Order No. 1 [Docket 18-2, Pet. Ex. H], June 10, 2009.)  The panel concluded,

> In considering the record before it, the Panel finds that adequate facts have been alleged, at this stage of the proceedings, to support a viable claim under the terms of the 1997 Agreement. [BCS] has alleged that mutual agreement had been reached by the parties with respect to amendments to that Agreement such that the proviso set forth in Section 21 of the 1997 Agreement . . . would not apply.  Further, the validity of the 1997 Agreement, as allegedly amended and extended, requires numerous findings of fact that preclude any preliminary dismissal.  For these reasons, CWVE's Motion to Dismiss is Denied.

(*Id*. at 1.)

On April 28, 2009, BCS filed an action with the Circuit Court of Kanawha County, West Virginia, seeking to validate the RP Agreement and extensions and invalidate the 2008 Agreement. BCS also asked the court to enjoin the arbitration in Richmond and to proceed with the Charleston arbitration.  CWVE moved to dismiss or stay the state court action pending arbitration.  Before the court issued its decision, on October 2, 2009, CWVE filed a Motion to Stay Arbitration with the Charleston Arbitration Panel.  The panel denied the motion ten days later, stating,

> Clearly this Panel has the discretion and authority to stay this matter, should it deem it appropriate.  However, given the status of the various arbitrations and the WV Action, coupled with the fact that this Panel has already considered, and ruled upon, CWVE's jurisdictional challenge to this arbitration, there appears to be a greater justification to proceed with next month's hearings than to stay the matter while the

> parties, in no small part due to CWVE's efforts, seek to tie themselves up battling in multiple arenas.

(Preliminary Order No. 2 [Docket 18-3, Pet. Ex. L], Oct. 12, 2009 (footnote omitted).) On November 3, 2009, the Kanawha County Circuit Court converted CWVE's motion to dismiss to a motion for summary judgment and granted it. The court explained that, under federal arbitration law, it lacked jurisdiction to hear the claims, as they had already been submitted to arbitration. *See Bayer CropScience LP v. Central W. Va. Energy, Inc.*, Civil Action No. 09-C-778 (Kan. Co. Cir. Court Nov. 3, 2009) [Docket 18-3, Pet. Ex. J].

After arbitration proceedings, which occurred from November 9-12, 2009, the Charleston Arbitration Panel issued the Arbitration Decision on February 11, 2010. The decision, which provided around forty pages of analysis, awarded BCS stipulated damages of $10,540,885.07. Central to its decision were the following: (1) the RP Agreement was extended through the end of 2008; (2) the 2008 Agreement "is voidable at the behest of BCS" (Arbitration Decision at 32); and (3) as to CWVE's argument that the Charleston Arbitration Panel should not rule on the validity of the 2008 Agreement, the panel reasoned,

> Nowhere in CWVE's extensive and impressive briefing in this case does it deal with its ambivalent, if not contrary, positions that it has directly interposed the [] 2008 Agreement as a bar to any recovery by BCS under the RP extension, yet suggested that the Panel cannot consider its validity or enforceability. The short answer to this argument is that CWVE has clearly plead [sic] and argued the validity of the [] 2008 Agreement throughout this proceeding. By doing so, it has placed that issue squarely before the Panel for a decision as to whether it bars enforcement of the RP extension, and it has waived its right to withdraw that aspect of the case from the jurisdiction of the Panel.

(*Id*. at 24.)

CWVE did not pay the award to BCS and, on February 16, 2010, filed a petition in the Eastern District of Virginia, seeking to vacate a portion of the Charleston Arbitration Panel's award.

BCS filed a motion to dismiss the petition in that court. On March 17, 2010, BCS filed the instant action to enforce the arbitration award. During the pendency of BCS's motion in the Virginia court, CWVE moved to dismiss or stay the present action in this court on May 6, 2010 [Docket 6], but before this court could rule on the motion, the Eastern District of Virginia issued an order dismissing the petition and granting BCS's motion to dismiss. *See Central W. Va. Energy, Inc.* v. *Bayer CropScience LP*, No. 3:10CV093 (E.D. Va. June 2, 2010). CWVE filed an appeal with the Court of Appeals for the Fourth Circuit on June 18, 2010.

As a result of the Virginia district court's decision, I denied as moot CWVE's motion to dismiss or stay the action. *See Bayer CropScience LP v. Central W. Va. Energy, Inc.*, No. 2:10-cv-348 (S.D. W. Va. June 11, 2010) [Docket 17]. I then ordered CWVE to respond to BCS's motion for summary judgment to enforce the arbitration award. CWVE responded on June 21, 2010, and also filed a cross-motion for summary judgment. BCS filed a reply on June 28, 2010. Both motions are now ripe for review.

## II.     Standard of Review

The West Virginia Arbitration Act provides that the prevailing party in an arbitration proceeding may file an action to confirm the arbitration award. *See* W. Va. Code § 55-10-3 ("Upon the return of [an arbitration] award, . . . it shall be entered up as the judgment or decree of the court[.]"). The Federal Arbitration Act (the "FAA") provides likewise. *See* 9 U.S.C. § 9 ("[A]t any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award[.]").

An arbitration award "is entitled to a special degree of deference on judicial review." *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 228 (4th Cir. 1991).

Congress limited the grounds upon which an arbitration award can be vacated under the FAA. A court may only vacate an award if one of the following occur:

> (1) [T]he award was procured by corruption, fraud, or undue means;
>
> (2) [T]here was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) [T]he arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) [T]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In reviewing arbitration awards, "a district . . . court is limited to determining whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation marks omitted); *see also Eureka Pipe Line Co. v. Simms*, 59 S.E. 618, 621 (W. Va. 1907) (explaining that arbitrator's "awards are favored in law and reluctantly set aside. Every presumption is made in favor of their fairness[.]").

In a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering such a motion, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**III. Discussion**

CWVE incorporates by reference the same arguments it made in its petition to the Eastern District of Virginia. (*See* Def.'s Resp. Pl.'s Mot. Summ. J. 5.) CWVE seeks to vacate a portion of the arbitration award because the Charleston Arbitration Panel "exceeded [its] powers" in violation of the FAA. 9 U.S.C. § 10(a)(4). In the alternative, CWVE argues that the court should, at the very least, stay these proceedings pending the resolution of CWVE's appeal of the Virginia district court's decision.

First, having specifically reviewed CWVE's filings in the Eastern District of Virginia and the Arbitration Decision, the court rejects CWVE's argument that the Charleston Arbitration Panel exceeded its powers under the FAA. Central to this argument is that the panel overstepped its authority and "adjudicate[d] the validity of the [] 2008 Agreement." (CWVE's Opp. BCS's Mot. Dismiss (E.D. Va. Mar. 22, 2010) [Docket 18-5, Ex. C] at 2.) As the Charleston Arbitration Panel explained, however, determining the validity of the 2008 Agreement was necessary to the adjudication of the contract dispute, and CWVE "placed that issue squarely before the Panel for a decision as to whether it bars enforcement of the RP extension." (Arbitration Decision at 24.) Moreover, the dispute was properly submitted to arbitration under the terms of the RP Agreement, and the arbitrators submitted a thoughtful and well-reasoned decision on the matter. The panel addressed all issues raised by the parties thoroughly and appropriately. CWVE brings no other grounds for invalidation of the arbitration award, and there is no evidence of fraud, corruption, or misconduct. Thus, the award should be enforced.

Second, CWVE asks this court to stay the proceedings in this matter because it has appealed the decision of the Eastern District of Virginia. CWVE fails to recognize, however, that the matter in this court and the matter in the Virginia court are distinct. Here, BCS asks the court to enforce

an arbitration award under the FAA. And although CWVE makes the same arguments to this court as it did to the Virginia court, the matter on appeal to the Fourth Circuit concerns claims that were dismissed in litigation filed only in Virginia. As such, it is not proper to stay the case pending appeal of a matter that was never – and never will be – before this court.

## IV. Conclusion

For the foregoing reasons, the plaintiff's Motion for Summary Judgment to enforce the arbitration award [Docket 11] is **GRANTED**, and the defendant's Cross-Motion for Summary Judgment to Vacate Portion of Arbitration Award [Docket 18] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: Aug. 6, 2010

_____
Joseph R. Goodwin, Chief Judge